No. 19,768.

THE ROCK MILLING & ELEVATOR COMPANY, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. COURTS—*State—Jurisdiction—Interstate Shipments—Action for Repairing Cars.* State courts have jurisdiction in actions to recover the amounts due shippers of interstate freight for repairing cars to put them in condition for holding the shipment, where the maximum charge for such repairs is fixed by the tariff on file with the interstate commerce commission.

2. LIMITATION OF ACTIONS—*Accrual of Cause—Cost of Repairing Cars.* The three-year statute of limitations applies to actions to recover the cost of repairing cars to put them in condition to receive the property to be shipped therein, and the statute begins to run on each item when the shipment is made.

3. RAILROADS—*Tariff—Repair of Cars—"Actual Cost of the Same."* The words "actual cost of the same" in the following tariff provision, "When cars furnished by carriers named below for grain or other loading require repairing in order to insure against leakage in transit, and material necessary for this repair is furnished by the shipper, the carrier will pay the actual cost of the same, but not to exceed eighty

cents per car," include the cost of the material and labor necessary to repair, but do not include the cost of inspecting or cleaning cars or the cost of attaching grain doors.

4. APPEAL AND ERROR—*Harmless Error—Evidence—Admission.* The admission in evidence of "Santa Fe Cooperage Circular No. 1" did not prejudice any substantial right of the defendant.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion on rehearing filed July 8, 1916. Reversal adhered to. (Original opinion filed January 8, 1916, not reported.)

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for the appellant.

*F. Dumont Smith,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: An opinion was delivered in this case on January 8, 1916, but has not been officially published. The plaintiff filed a motion for a modification of the opinion. The defendant filed a motion for a rehearing. A rehearing was granted.

In this action the plaintiff recovered judgment against the defendant in the sum of $3076.20 for repairing cars furnished the plaintiff by the defendant in which to ship grain. The defendant appeals.

The action was begun February 25, 1913. Between December 7, 1908, and May 15, 1911, the plaintiff received from the defendant 5127 cars in which to ship bulk grain. All these cars were used in interstate shipments. Before loading the cars it was necessary for the plaintiff to repair them to prevent grain leaking therefrom. The petition asked for 80 cents for repairing each car. The jury allowed 60 cents for material and labor. From December 3, 1908, to December 28, 1910, the defendant's tariff contained the following provision:

"When cars furnished by carriers named below for grain or other loading require repairing in order to insure against leakage in transit, and material necessary for this repair is furnished by the shipper, the carrier will pay the actual cost of the same, but not to exceed eighty cents per car."

On December 28, 1910, the tariff was amended to read:

"When cars furnished for bulk grain or other bulk freight loading require repairing in order to insure against leakage in transit, and the

material necessary for repairing is furnished by the shipper, the line furnishing the car will pay for the cost of the repairs, but not to exceed eighty cents per car."

During all of the times of the transactions involved in this action the tariff contained this provision:

"When cars furnished for grain or other loading requiring interior doors are not so equipped by the railroad company, and such doors are furnished by the shipper, the actual cost thereof, but not to exceed $1.20 per car, will be paid by the carrier."

During this time Rule 78 of the interstate commerce commission was in effect. This rule is:

"A carrier may not lawfully reimburse shippers for the expense incurred in attaching grain doors to box cars unless expressly so provided in its tariff." (Conference Rulings, Bulletin No. 2.)

1. The first contention is that the court did not have jurisdiction of the matters involved in this controversy. The defendant's argument is that every matter where there is a rate concerned or a tariff to be construed or a rate founded on a tariff to be adjudicated, must come before the interstate commerce commission or a federal court.

Section 8 of the interstate commerce act reads:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." (24 U. S. Stat. at Large, ch. 104, p. 379.)

Section 9 in part reads:

"That any person or persons claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for recovery of the damages for which such common carrier may be liable under the provisions of this Act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt."

Section 22 in part reads:

"Nothing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies."

In *Penna. R. R. v. Puritan Coal Co.*, 237 U. S. 121, 35 Sup. Ct. Rep. 484, 59 L. Ed. 867, the court said:

"Construing §§ 8 and 22, however, in connection with the statute as a whole, the Act to Regulate Commerce is both declaratory and creative, and while shippers are given new rights, existing causes of action are preserved and the jurisdiction of state courts is not superseded, in cases in which the decision does not involve the determination of matters calling for the exercise of administrative power and discretion of the Commission or relate to subjects over which exclusive jurisdiction is given to the Federal courts.

"While the Federal courts may have exclusive jurisdiction of a suit brought to declare that a rule of practice promulgated by the carrier is unfair, a suit for damages occasioned by the violation or discriminatory enforcement of the carrier's rule, fair on its face and not attacked as unfair, does not involve administrative questions but only those of fact; and even though for damages arising in interstate commerce, such a suit is not within the exclusive jurisdiction of the Federal courts, but may be prosecuted either in those courts or in the state courts." (Syl. ¶¶ 2, 3.)

This principle was recognized and followed in *Ill. Cent. R. R. v. Mulberry Coal Co.*, 238 U. S. 275, 35 Sup. Ct. Rep. 760, 59 L. Ed. 1306.

In *Penna. R. R. v. Clark Coal Co.*, 238 U. S. 456, 35 Sup. Ct. Rep. 896, 59 L. Ed. 1406, the method or rule for the distribution of cars to coal-mining companies was called in question. In the syllabus to this case we find this language:

"Whether the rule or method of car distribution for mines furnishing coal f. o. b. at the mines for shipment to other States as practiced by a railroad company is unjustly discriminatory is one which the Interstate Commerce Commission has authority to pass upon.

"Where the complaint involves an attack upon the rule or method of car distribution practiced by the carrier in distributing cars for interstate shipments, no action is maintainable in any court for damages alleged to have been inflicted thereby until the Commission has made its finding as to the reasonableness of such rules and methods." (Syl. ¶¶ 3, 4.)

The fact that the shipper in *Penna. R. R. v. Clark Coal Co.* appealed to the interstate commerce commission for relief against the rule was taken into consideration by the court.

The correctness of the principle as above set out, announced in the Puritan and Mulberry cases, was recognized (p. 472) in the Clark case.

The defendant cites *Loomis v. Lehigh Valley R. R.,* 240 U. S. 43, decided by the United States supreme court January 24, 1916, as showing conclusively that the questions in the case now before this court can not be determined by a state court. That was a case involving the repairing of cars furnished for the shipment of wheat, oats, rye, apples, cabbage, and potatoes. Prior to 1906 cars had been furnished the plaintiffs and lumber had been supplied without charge, for the construction of inside doors and transverse bulkheads. In 1906 the practice of furnishing lumber was discontinued and the defendant refused to supply material for fitting the cars or to furnish cars completely repaired for carrying in bulk the articles enumerated. The plaintiffs constructed the inside doors and bulkheads in the cars and brought an action to recover the cost of the material used. The court said:

"An adequate consideration of the present controversy would require acquaintance with many intricate facts of transportation and a consequent appreciation of the practical effect of any attempt to define services covered by a carrier's published tariffs, or character of equipment which it must provide, or allowances which it may make to shippers for instrumentalities supplied and services rendered. In the last anaylsis the instant cause presents a problem which directly concerns rate-making and is peculiarly administrative. *Atchison, Topeka & Santa Fe Ry. v. United States,* 232 U. S. 199, 220. And the preservation of uniformity and prevention of discrimination render essential some appropriate ruling by the Interstate Commerce Commission before it may be submitted to a court. See *Penna R. R. v. Puritan Coal Co.,* 237 U. S. 121, 128, 129; *Penna. R. R. v. Clark Coal Co.,* 238 U. S. 456, 469, 470." (p. 50.)

In the case now before this court no attack is made on the defendant's tariff or rules embraced therein concerning the cooperage of cars. The plaintiff seeks to recover what the defendant says by its tariff it will pay. There is a dispute concerning the meaning of the tariff. Is it necessary that this dispute be presented to the interstate commerce commission before the plaintiff can recover what the tariff says the defendant will pay? Every contract, every writing, every law, so far as its meaning is concerned, may be, and often is, a subject of dispute, even when there should be no dispute. Tariff

provisions are made as plain and simple as language can make them, but circumstances will arise concerning which the meaning of the tariff may not be clear. · Must this be submitted to the interstate commerce commission before the injured shipper can resort to the courts, when he is not attacking the tariff but is merely undertaking to obtain that which is due him? That is not the intention of the interstate commerce law. Actions by carriers to recover the rate fixed by the tariff have been maintained in the courts of this state where a rate less than that fixed had been collected. (*Railroad Co. v. Thisler,* 90 Kan. 5, 133 Pac. 539; *Railway Co. v. Theis,* 96 Kan, 494, 152 Pac. 619.) If a carrier can recover what is due it under a tariff, it ought to, but does not necessarily, follow that a shipper can recover from the carrier what is due the shipper under the same tariff. We conclude that the court had jurisdiction in this action.

2. The defendant contends that all items set out in the petition and accruing more than three years before the commencement of the action are barred by the three-year statute of limitations. The plaintiff to meet this argues that all the cars were furnished under one hiring and under one continuous contract. If the 5127 cars were ordered at one time this argument of the plaintiff would be correct, but there is nothing to indicate that this was done. It is not so alleged in the petition nor established by the evidence. Each order for cars and shipment thereunder constituted a separate transaction on which an action might have been maintained and the statute of limitations began to run when that cause of action accrued. It was not in any way connected with any other order for cars. Ordering cars and shipping freight therein under the rates, rules and regulations named in a tariff filed with the interstate commerce commission, do not constitute a contract in writing and the five-year statute of limitations does not apply. We hold that the three-year statute of limitations bars all transactions set out in the petition where the shipments were made more than three years prior to the commencement of the action.

3. Complaint is made of the construction placed by the trial court on the provision of the tariff providing for the repair of cars. The phrase "actual cost of the same" in the

tariff effective from December 3, 1908, to December 28, 1910, includes the cost of material and labor of making the repairs. Nothing else is included in the tariff provision just mentioned or in the one effective December 28, 1910. Neither inspecting nor cleaning cars is included. Reimbursement of shippers for the expense incurred in attaching grain doors is prohibited by rule 78 of the interstate commerce commission when not expressly provided for, and for that reason that expense can not be recovered.

4. Complaint is made of the admission in evidence of "Santa Fe Coöperage Circular No. 1." We do not see how the admission of this document in any way prejudiced the defendant, although it may not have proved anything in the case.

The judgment is reversed and the cause is remanded for a new trial.